Citation Nr: 1550121 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 07-07 832 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

A. Ishizawar, Counsel






INTRODUCTION

The appellant is a Veteran who served on active duty from June 1972 to March 1980.

This matter comes before the Board of Veterans' Appeals (Board) from a February 2006 rating decision of the Buffalo, New York Department of Veterans Affairs (VA) Regional Office (RO) that denied service connection for PTSD. 

In the Veteran's March 2007 VA Form 9, substantive appeal, he requested a hearing before the Board. Such a hearing was scheduled for June 2008; however, he failed to appear and his hearing request is deemed withdrawn.

In November 2010, January 2013, and July 2013, the case was remanded for additional development.

Finally, as was noted in the January 2013 remand, although the Veteran filed a claim for service connection for PTSD, the evidence shows diagnoses of psychiatric disabilities other than PTSD (specifically, depressive disorder and mood disorder). In light of Clemons v. Shinseki, 23 Vet. App. 1 (2009), the issue on appeal has been recharacterized to encompass the other psychiatric diagnoses.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

At the outset, the Board recognizes that the Veteran's appeal has been pending since 2007 and that there have been previous remands for additional development. While the Board regrets the delay involved in remanding this case again, it is also of the opinion that further development of the record is required to comply with VA's duty to assist the Veteran in the development of the facts pertinent to his claim. See 38 C.F.R. §3.159.
In particular, the Veteran seeks service connection for an acquired psychiatric disorder, to include PTSD. His service treatment records, including his March 1980 service separation physical examination report and report of medical history, are silent for any complaints, findings, treatment, or diagnoses related to a psychiatric disability. His service personnel records show he was stationed in Korea from March 26, 1973 to April 2, 1974, and in Germany from May 8, 1976 to February 22, 1979. His military occupational specialty (MOS) in the U.S. Army was an automotive repairman.

Through various statements and PTSD questionnaires, the Veteran has asserted what are essentially four in-service stressor events. First, he states that in either January 1973 or July 1973, he was working at a truck repair shop in Camp Casey, Korea, when he witnessed an individual (J.F.) become severely injured after being run over by a truck. [Notably, the Veteran was not stationed in Korea in January 1973; therefore, it is assumed that the incident would have occurred in July 1973, if verified.] Second, he states that in December 1973, he participated in a recovery mission that took him near the Korean Demilitarized Zone (DMZ), where he and others were fired upon by North Koreans. Third, he states that in December 1977, while he was stationed at Darmstadt, Germany, he was asked as a drug and alcohol counselor to identify the remains of an individual who had died from a drug overdose; the Veteran could not recall the name of that individual. Fourth, the Veteran states that while serving in Germany in July 1977, he was notified that his good friend, R.H. (a.k.a. B.H.), had been killed when his helicopter was shot down in Korea near the DMZ. 

Regarding the first three in-service stressors described above, extensive development has been undertaken to corroborate such events. Such efforts have included contacting the Joint Services Records Research Center, the Defense Technical Information Center, the U.S. Army Crime Records Center, the National Personnel Records Center, and the Office of the Provost Marshal for the U.S. Army's 2nd Infantry Division. The response from all centers contacted was, essentially, that there was either no evidence that the Veteran's claimed in-service events occurred or that there was insufficient evidence to corroborate his claims. Accordingly, the Veteran's first three stressors are not verified.
Regarding the fourth stressor involving the death of R.H. (a.k.a. B.H.), the Veteran has submitted an article from Time magazine, dated July 25, 1977, which confirms that individual's death. Therefore, the fourth incident is considered verified. 

A question that remains to be resolved, however, is whether such incident is sufficient to support the diagnosis of PTSD. Significantly, the record shows that when the Veteran was initially given a diagnosis of PTSD in January 2005, he reported his military stressors as seeing his friend get killed by a truck next to him and having friends who were killed in a helicopter crash in Korea. As noted, however, the stressor event involving the death of a friend from a truck accident is not verified. Similarly, on PTSD evaluation (for treatment purposes) in February 2005, the Veteran reported his military stressors as being involved in a fire fight with North Koreans (and seeing friends wounded and corpses of North Korean soldiers); of having a good friend of his die in a helicopter accident (he denied seeing the crash or being involved in the clean-up); and of being present when his friend was severely injured in an accident involving a truck. Although the February 2005 treatment provider also diagnosed PTSD; as discussed above, only the death of a friend in the helicopter accident has been verified. 

The sufficiency of a stressor event to support a diagnosis of PTSD is a medical question. As the PTSD diagnoses of record, thus far, have been based (at least in part) on stressor events that are not verified, the Board finds that a new VA examination for a medical opinion is necessary to determine whether the Veteran's single verified stressor event is sufficient to support a diagnosis of PTSD. 

Finally, as noted in the Introduction, the Veteran has also been given diagnoses of depressive disorder and mood disorder. A VA examination is thus necessary for a medical opinion to determine whether either of those diagnoses is related to his military service.

Accordingly, the case is REMANDED for the following actions:

1. Arrange for the Veteran to be examined by an appropriate psychologist or psychiatrist to determine the nature and etiology of his claimed psychiatric disability. The Veteran's claims file, to include this remand, must be reviewed by the examiner in conjunction with the examination. All appropriate diagnostic testing should be completed. After interviewing/examining the Veteran and reviewing the claims file, the examiner should provide an opinion responding to the following questions:

(a) What is the correct diagnosis for the Veteran's psychiatric disability? Specifically, do the symptoms noted support or exclude a diagnosis of PTSD?

(b) If PTSD is diagnosed, is the Veteran's verified stressor event in service (of hearing about his friend dying in a helicopter crash in Korea while he was stationed in Germany) of sufficient gravity to support a diagnosis of PTSD? Does the Veteran have PTSD due to this stressor event in service?

(c) If PTSD is not diagnosed (or if diagnosed along with a co-existing psychiatric disability), for each psychiatric disability other than PTSD that is diagnosed (to specifically include a depressive disorder and mood disorder), is it at least as likely as not (50 percent or better probability) that such disability is related to the Veteran's service?

All opinions provided must be thoroughly explained, and an adequate rationale for any conclusions reached should be provided. If any requested opinion cannot be provided without resort to speculation, the examiner should so state, and provide a supporting explanation as to why an opinion cannot be provided without resorting to speculation.

2. After the above development has been completed, review the file and ensure that all development sought in this remand is completed. Undertake any additional development indicated by the results of the development requested above, and re-adjudicate the claim for service connection for an acquired psychiatric disorder, to include PTSD. If the claim remains denied, the RO/AMC should issue an appropriate supplemental statement of the case and afford the Veteran and his representative the opportunity to respond. The case should then be returned to the Board, if in order, for further review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).